UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOE BETHUNE                                                                                    PLAINTIFF

V.                                    No. 4:22-CV-185-LPR-JTR

LIPSMEYER, Corporal,
Faulkner County Sheriff's Office                                                              DEFENDANT

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I.  Introduction

Plaintiff Joe Bethune ("Bethune"), an inmate in the Faulkner County Detention Center ("FCDC"), filed a *pro se* § 1983 Complaint alleging that Defendant Corporal Lipsmeyer used excessive force against him on December 16, 2021. *Doc. 2*. After screening, Bethune was allowed to proceed with this excessive force claim against Defendant Lipsmeyer. *Docs. 5–69*. However, Bethune's claims

against Defendants Lieutenant Roper, Lieutenant Volkman, and Faulkner County Sheriff's Officer were dismissed, without prejudice, because Bethune failed to state a claim against them. *Docs. 4–6, 13*.

Defendant Lipsmeyer has now filed a Motion for Summary Judgment, Brief in Support, and Statement of Indisputable Facts based on Bethune's alleged failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). *Docs. 16–18*. Bethune has filed a Response (*Docs. 25–26*), and Lipsmeyer filed a Reply (*Doc. 27*).

For the reasons explained below, the Court recommends that Defendant Lipsmeyer's Motion for Summary Judgment be granted.[1]

## II. Discussion

### A. The PLRA's Mandatory Exhaustion Requirements

The PLRA provides that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).

---

[1]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

The purposes of the PLRA's exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Porter v. Nussle,* 534 U.S. 516, 524–25 (2002) (the exhaustion requirement allows detention officials the time and opportunity to review and address complaints internally before the prisoner is allowed to initiate a federal § 1983 claim). It is well settled law that the PLRA's exhaustion requirement is *mandatory*. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019).

The PLRA requires prisoners to: (1) fully and properly exhaust their available administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process *before* filing an action in federal court. *Jones*, 549 U.S. at 211, 219–20, 223–24; *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton*, 752 F.3d 1136, 1141–42 (8th Cir. 2014); *Johnson v. Jones*, 340 F.3d 624, 626–28 (8th Cir. 2003). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out and doing so properly so that the agency addresses the issues on

the merits"). Thus, Bethune was required to exhaust all available FCDC administrative remedies before he initiated this § 1983 action.

The FCDC provides the following administrative process for inmates to exhaust grievances: (1) first, the inmate must try to resolve the problem verbally, "through the unit officer;" (2) if the problem is not resolved verbally, the inmate "*shall* file a written grievance within ten days of the incident or occurrence" through a kiosk located within each cell; (3) finally, the inmate *must* appeal the answer to the jail lieutenant. *Doc. 18-4* (emphasis added)*; Doc. 18-1 at 2, ¶ 12*.

### B.   Undisputed Facts[2]

1.   Scott Huffman, the FCDC's Jail Administrator, reviewed Bethune's entire FCDC grievance file, consisting of approximately eighty-two grievances, and confirmed that Bethune did not file any grievances *directly* complaining that Defendant Lipsmeyer used excessive force against him. *Doc. 18-1 at 1, ¶¶ 6, 9*.

2.   Instead, Bethune *tangentially* mentioned the December 16, 2021 use-of-force incident in five grievances. *See Doc. 18-3 at 30–32, 56, 61*.

3.   In the first grievance, filed January 15, 2022, Bethune stated, "I would like to be reclassified and move back to unit 2 and be eligible for trustee. I know there was an incident I was involved in and accept my part in wrongdoing for that

---

[2] The sources for these facts are the Declaration of FCDC Jail Administrator Scott Huffman (*Doc. 18-1*) and Bethune's relevant grievance history (*Doc. 18-3*).

4

but that was over 30 days ago…" *Doc. 18-3 at 30*. Sergeant Volkman responded that Bethune would "need to complete 30 days with no writes ups due to the incident in 306." *Id.*

4. In the remaining four grievances, filed January 20, January 25, March 16, and April 11, 2022, Bethune again asked to be reclassified and was denied due to the "incident in 306." *Doc. 18-3 at 31–32*.

## C. Defendant Lipsmeyer's Motion for Summary Judgment

In his Motion for Summary Judgment, Defendant Lipsmeyer contends that the excessive force claim against him should be dismissed because Bethune failed to exhaust the administrative remedies available to him at FCDC. Bethune makes three arguments as to why he either exhausted his administrative remedies or should be excused from doing so. The Court will consider each in turn.

### 1. Administrative Remedies Were Allegedly Not "Available" to Bethune

Bethune pre-emptively argued in his Complaint that that he did not file a grievance regarding the use-of-force incident because "both grievance response officers were involved in th[e] incident." *Doc. 2 at 3–4*. Thus, Bethune appears to argue that the grievance process was "unavailable" to him.

Under the PLRA, prisoners are only required to exhaust *available* administrative remedies. 42 U.S.C. § 1997e(a). An administrative remedy is unavailable: "(1) where it operates as a simple dead end—with officers unable or

consistently unwilling to provide any relief to aggrieved inmates; (2) where the administrative scheme is so opaque as to be practically incapable of use; and (3) where administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019) (citing *Ross v. Blake*, 578 U.S. 632, 641–44 (2016)) (cleaned up).

Bethune's *repeated* use of the FCDC's grievance procedure shows that it was "capable of use." Bethune filed over eighty grievances through the FCDC's kiosk and received responses from FCDC officials, often on the merits, and many times receiving the exact relief he requested. *See e.g.*, *Doc. 18-3 at 70, 78–79*. Thus, the FCDC grievance procedure was not a "simple dead end."

Finally, Bethune has *not* provided any evidence, *or even alleged*, that any FCDC employee threatened him or otherwise intimidated him into not filing a grievance. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (upholding dismissal on summary judgment because prisoners failed to present evidence that their administrative remedies were thwarted). Although Bethune may have subjectively believed that it would have been futile to file a grievance against Lipsmeyer, the Court cannot "consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'" *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002).

6

Accordingly, Bethune has failed to show that FCDC's grievance procedure was unavailable to him.

### 2. Bethune Did Not Exhaust His Administrative Remedies By Making a "Verbal Complaint"

In his Response, Bethune changes tack by arguing that he *did exhaust* his administrative remedies by making "a verbal complaint to Sgt. Volkman regarding the excessive use of force by Defendant Lipsmeyer." *Doc. 25 at 1*. Bethune states that he does not know the exact time and date he made this attempt to verbally exhaust his administrative remedies. *Id.*

Assuming Bethune's unsworn statement regarding a "verbal complaint" to be true, FCDC's grievance procedure explicitly states that, if a complaint is not resolved verbally, the inmate *shall* file a written grievance and then *must* appeal to the jail lieutenant. *Doc. 18-4*. Bethune failed to take these additional steps mandated by the FCDC's grievance procedure.

Accordingly, Bethune cannot rely on his "verbal complaint" to show that he *fully and properly* exhausted his excessive force claim against Lipsmeyer.

### 3. Bethune Was Not Excused From Exhausting His Administrative Remedies Merely Because FCDC Officials Were Aware of the Use-of-Force Incident

Finally, Bethune contends that FCDC officials had "direct knowledge of the excessive use of force incident" because, when responding to Bethune's

classification grievances, Sergeant Volkman's referenced the incident "on five separate occasions." *Doc. 25 at 2, ¶ 3.*

A prisoner placing prison officials on "notice" of an incident supporting a constitutional claim falls far short of satisfying the PLRA's mandatory exhaustion requirement. Instead, before proceeding with a § 1983 claim in federal court, a prisoner *must* exhaust administrative remedies by using *all* steps of the grievance procedure. *Woodford*, 548 U.S. at 90; *see also Porter* 534 U.S. at 525, 530 (2002) (noting the reasons Congress enacted a "firm exhaustion requirement" under the PLRA).

Accordingly, by making prison officials aware of the use-of-force incident, Bethune did not comply with the PLRA's exhaustion requirement.

### III. Conclusion

The undisputed facts show that the FCDC's grievance procedure was available to Bethune, but Bethune failed to fully and properly exhaust his excessive force claim against Defendant Lipsmeyer.

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Lipsmeyer's Motion for Summary Judgment (*Doc. 16*) be GRANTED.

2. Bethune's excessive force claim against Lipsmeyer be DISMISSED, without prejudice, for failure to exhaust administrative remedies.

3. Bethune's Motion to Amend Complaint to sue Lipsmeyer in his official *and* personal capacity (*Doc. 28*) be DENIED, as moot.

4. Bethune's Motion to Compel production of the December 16, 2021 video footage and incident reports (*Doc. 30*) be DENIED, as moot.

5. Judgment be entered accordingly.

DATED this 17th day of August, 2023.

_____<br>
UNITED STATES MAGISTRATE JUDGE